1
2
3
4
5              IN THE UNITED STATES DISTRICT COURT
6            FOR THE NORTHERN DISTRICT OF CALIFORNIA
7

**United States District Court**
**For the Northern District of California**

8   WILLIAM HELM, et al.,                    Nos. C 08-01184 SI and C 08-1190 SI

9              Plaintiffs,                    **ORDER GRANTING IN PART AND**
                                             **DENYING IN PART DEFENDANTS'**
10  v.                                       **MOTIONS TO DISMISS FOR FAILURE**
                                             **TO STATE A CLAIM, GRANTING IN**
11  ALDERWOODS GROUP, INC.,                  **PART AND DENYING IN PART**
                                             **DEFENDANTS' MOTION TO DISMISS**
12             Defendant.                     **FOR LACK OF PERSONAL**
    _____/        **JURISDICTION, and DENYING**
13                                           **DEFENDANTS' MOTIONS FOR**
    CLAUDE BRYANT, et al.,                   **SANCTIONS**
14
               Plaintiffs,
15
    v.
16
    SERVICE CORPORATION
17  INTERNATIONAL, et al.,

18             Defendants.
    _____/
19

20          On May 29, 2009, the Court heard oral argument on defendants' motions to dismiss and

21  defendants' motions for sanctions.  Having considered the arguments of the parties and the papers

22  submitted, and for good cause shown, the Court rules as follows.

23

24                              **BACKGROUND**

25  **A.     Procedural Background**

26          These related cases involve potential class action claims for unpaid wages brought by employees

27  against two primary entities, Alderwoods Group, Inc. ("Alderwoods") and Service Corporation

28  International ("SCI").  (SCI bought Alderwoods in 2006.)  The cases have their origins in a case filed

United States District Court
For the Northern District of California

in the Western District of Pennsylvania, *Prise v. Alderwoods Group, Inc.*, No. 06-1641 ("*Prise I*"). That case, which is still pending before Judge Joy Flowers Conti, initially included both state and federal claims against Alderwoods, SCI, and other entities. On June 8, 2007, Judge Conti declined to exercise supplemental jurisdiction over plaintiffs' state law claims.[1] Plaintiffs subsequently filed a complaint in Alameda Superior Court against Alderwoods and SCI, alleging ten causes of action arising under state law. That case, *Prise v. Alderwoods Group, Inc.*, No. 07-5140 MJJ ("*Prise II*"), was removed to this district on October 5, 2007.

On November 8, 2007, plaintiffs Claude Bryant, Craig Fulcher, Sanford Levine, and Thomas Thompson filed a complaint in this Court, *Bryant v. Alderwoods* ("*Bryant I*"), No. 07-5696 SI, against SCI, Alderwoods, and various SCI subsidiaries for claims under the under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*

Judge Conti dismissed SCI without prejudice from *Prise I* on November 15, 2007, such that only plaintiffs' federal law claims under the FLSA against Alderwoods remained in that case. On November 28, 2007, plaintiffs' counsel filed a voluntary dismissal of *Prise II*. They then refiled the state law claims in Alameda Superior Court, this time as two separate actions. The first, *Helm v. Alderwoods Group, Inc.* (*Helm*), was filed on December 5, 2007 by named plaintiffs William Helm, Deborah Prise, Heather P. Rady, and others, alleging state law claims against Alderwoods.[2] The second case, also filed on December 5, was *Bryant v. Service Corporation International* ("*Bryant II*"). It alleged state law claims against SCI and other corporate and individual defendants.

After Judge Conti dismissed SCI from *Prise I*, plaintiffs also filed *Stickle v. SCI Market Support Center*, No. 08-83. *Stickle* was filed in the United States District Court for the District of Arizona on January 15, 2008 and alleges violations of the FLSA and other federal laws against SCI and various SCI

---

[1] The Court grants defendants' request for judicial notice of the transcripts of proceedings before Judge Conti. Defs' Request for Judicial Notice, exs. A-C.

[2] Plaintiffs subsequently dismissed several other defendants who were originally named in *Helm*, leaving Alderwoods as the only remaining *Helm* defendant.

2

1   subsidiaries.[3]

2       On January 25, 2008, plaintiffs filed amended complaints in both *Helm* and *Bryant II* in Alameda

3   County Superior Court.  Shortly thereafter, in late February 2008, defendants removed *Helm* and *Bryant*

4   *II* to this Court, based on diversity jurisdiction (*Helm*, No. C 08-1180 SI; and *Bryant II*, No. C 08-1190

5   SI).  On April 15, 2008, the parties stipulated to transfer *Bryant I* (the FLSA claims against  both SCI

6   and Alderwoods) from this Court to the Western District of Pennsylvania.

7       Thus, the two cases still pending before this Court, *Helm* and *Bryant II*, allege only state-law

8   based  wage and hour-related claims.

9

10  **B.       Complaint Allegations**

11      The *Bryant II* complaint is bought against SCI-related entities on behalf of a putative class

12  consisting of "those employees and former employees of defendants who were suffered or permitted to

13  work by defendants and not paid their regular or statutorily required rate of pay for all hours worked."

14  Complaint ¶ 237.[4]   The putative class consists of more than 10,000 employees, "a significant

15  percentage" of whom are in California.  Complaint ¶ 230.  The complaint alleges ten causes of action,

16  including causes of action for violation of California's Labor Code; violation of the wage and hour laws

17  of 31 other states, Puerto Rico and the District of Columbia; unlawful and unfair business practices in

18  violation of California's Unfair Competition Law; and common law claims for unjust enrichment,

19  conversion, fraud, misrepresentation, breach of contract, breach of the implied covenant of good faith

20  and fair dealing, and quantum meruit.  Plaintiffs allege that defendants did not compensate employees

21  for time spent on calls, attending training, performing "community work," or meeting with clients to

22  discuss "pre-need purchases."  The complaint also alleges that defendants required employees to work

23  during meal breaks, directed employees not to record their hours for all time worked, and refused to pay

24

25      [3]  The Court grants defendants' request for judicial notice of the complaint in *Stickle*.  Defs'

26  Request for Judicial Notice, ex. M.

27      [4]  Unless otherwise noted, all complaint citations are to the *Bryant II* complaint.

28                                                      3

1  overtime unless the overtime had been pre-approved.  The complaint does not allege any causes of

2  action arising under federal law.

3       The *Helm* complaint is brought against Alderwoods on behalf of a putative class that consists

4  of several thousand employees.  *Helm* Complaint ¶ 60.  Its allegations are substantially similar to the

5  *Bryant II* complain, except that it alleges violation of the wage and hour laws of only 26 other states and

6  Puerto Rico.

7

8  **C.      Personal Jurisdiction Facts**

9       The corporate defendants in *Bryant II* are: SCI, SCI Eastern Market Support Center, L.P.

10  ("Eastern Market Support"), SCI Houston Market Support Center, L.P. ("Houston Market Support"),

11  SCI Funeral and Cemetery Purchasing Cooperative, Inc. ("SCI Cooperative"), and SCI Western Market

12  Support Center ("Western Market Support").  SCI, Eastern Market Support, and Houston Market

13  Support contest this Court's exercise of jurisdiction over them.

14       SCI is a publicly held Texas corporation.  Decl. of Janet Key in Supp. of SCI Mot. to Dismiss

15  ("Key Decl.") ¶ 3.  [*Bryant II*, Docket No. 133]  Its corporate headquarters and only offices are located

16  in Houston, Texas.  *Id.* ¶ 5.  SCI owns approximately 180 subsidiaries and affiliated companies in the

17  United States.  The subsidiaries in turn own and operate funeral homes, mortuaries, crematoriums, and

18  cemeteries.  *See* Defendants' Request for Judicial Notice, ex. 4 (Judith M. Marshall Declaration

19  ("Marshall Decl.") ¶ 8).[5]

20       SCI's subsidiaries include Eastern Market Support, Western Market Support, and Houston

21  Market Support, which provide human resources services (e.g. management, administrative, accounting,

22

23  ─────────────────────

24      [5]  Defendants ask the Court to take judicial notice of facts stated in a declaration that was filed
in *Prise I*.  The Court doubts that this is appropriate matter for judicial notice.  *See* Fed. R. Evid. 201
25  ("A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally
known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready
determination by resort to sources whose accuracy cannot reasonably be questioned.").  Plaintiffs
26  appear, however, to stipulate to the admissibility of this document.  *See* Cressman Decl. ¶ 65.
Accordingly, the Court treats the Marshall declaration as if it were a declaration that had properly been
27  filed in this case.

28

United States District Court
For the Northern District of California

and data processing functions) to individual funeral-related businesses. *See* Marshall Decl. ¶ 4; Decl. of Gwen Petteway in Supp. of Houston Market Support's Mot. to Dismiss ("Petteway Decl.") ¶ 3. [*Bryant II*, Docket No. 130]  Each of these three companies in turn has a contract with another SCI subsidiary, SCI Cooperative, which provides additional human resources services to the individual businesses. *See* Marshall Decl. ¶ 4.  SCI maintains that the three support companies provide services only in their respective regions.[6]

SCI wholly owns SCI Funeral Services, LLC, which in turn wholly owns SCI California Funeral Services, Inc.  SCI California Funeral Services, Inc. wholly owns ECI Capital Corporation.  The latter two entities own 5% and 95%, respectively, of California Cemetery & Funeral Services, LLC.[7] California Cemetery & Funeral Services, LLC owns 118 funeral homes and 32 cemeteries in California. Decl. of Sarah Cressman in Supp. of Pls. Opp. ("Cressman Decl."), ex. B, part 28 at 5.  SCI derives revenue from its California businesses; its financial statements include revenue and expenses from these businesses.   Cressman Decl., ex. A, Tr. 127:7-16 & ex. B, part 21.   Plaintiffs contend that SCI establishes employment policies for the employees of its California businesses by providing them with employee handbooks, *id.* part 4, encouraging use of a company intranet called "Global Village,"[8] *id.* part 6 at 347, and imposing a "Code of Conduct of Ethics" and a "whistleblower policy" on officers and employees of SCI, *id.* part 19 at 1 & part 20.  Employees of SCI's California businesses are eligible to participate in a 401(k) retirement savings plan and defined benefit plan, both sponsored by SCI.

---

[6] That is, Houston Market Support provides services to companies located in Texas, Louisiana, Georgia, Florida, Tennessee, North Carolina, South Carolina, Alabama, Missouri, Kansas, West Virginia, Mississippi, and Oklahoma. Petteway Decl. ¶ 3.  Eastern Market Support provides services to businesses in Connecticut, Illinois, Iowa, Maine, Maryland, Michigan, Minnesota, Nebraska, New Hampshire, New Jersey, New York, Ohio, Pennsylvania, Rhode Island, and Virginia. Decl. of Robert Pisano in Supp. of Eastern Market Support Mot. to Dismiss ("Pisano Decl.") ¶ 4. [*Bryant II*, Docket No. 134]

[7] For these facts relating to SCI's corporate structure, the Court has relied on an organizational chart defense counsel provided to the Court after oral argument.  The Court will order this chart to be included in the record of this case in a separate order.

[8] According to the employee handbook, Global Village "provides associates with 24-hour access to Company news, applications, reference data, policies, procedures and departmental information." *Id.*, ex. B, part 6 at 347.

1   Cressman Decl., ex. B, pts. 2 & 3.[9]

2       Plaintiffs also note that SCI has created a national brand for its "deathcare" products, called

3   "Dignity Memorial."  It describes the brand as follows:

> We have branded our funeral operations in North America under the name Dignity
> Memorial®.  We believe our transcontinental branding strategy gives us a strategic
> advantage and identity in the industry.  While this branding process is intended to
> emphasize our seamless national network of funeral service locations and cemeteries, the
> original names associated with acquired operations, and their inherent goodwill and
> heritage, generally remain the same.

Cressman Decl., at ex. B, part 28 at 7.  SCI states on its website that it provides training and professional

development through "Dignity University."  *Id.*, part 25.  Employees of SCI's California businesses

participate in Dignity University trainings through meetings and on-line seminars.  *Id.* at ex. A (Ryan

Depo.), Tr. 127:20-128:25.  SCI's CEO is also chair of the Dignity University board.  *Id.* at Tr. 128:5-

16.

## LEGAL STANDARD

**1.   Motion to Dismiss for Lack of Personal Jurisdiction**

Personal jurisdiction over a non-resident defendant may exist if the defendant has either a

continuous and systematic presence in the state (general jurisdiction), or minimum contacts with the

forum state such that the exercise of jurisdiction "does not offend traditional notions of fair play and

substantial justice" (specific jurisdiction).  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)

(citation omitted).  Where there is no federal statute applicable to determine personal jurisdiction, a

district court should apply the law of the state where the court sits.  *See Schwarzenegger v. Fred Martin*

*Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).  California law requires only that the exercise of personal

jurisdiction comply with federal due process requirements.  *See id.* at 800-01.

"A defendant whose contacts with a state are 'substantial' or 'continuous and systematic' can

---

[9]   SCI objects that exhibit 3 (detailing the 401(k) plan) is inadmissible because the document
plaintiffs filed is incomplete.  The version plaintiffs filed with the Court appears to be complete.  In any
event, SCI does not dispute the more important point, which is that SCI sponsors retirement and benefits
plans for the employees of its California companies.

**United States District Court**
For the Northern District of California

be haled into court in that state in any action, even if the action is unrelated to those contacts." *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 (1984)).  "This is known as general jurisdiction.  The standard for establishing general jurisdiction is fairly high and requires that the defendant's contacts be of the sort that approximate physical presence." *Id.* (citations omitted). "Factors to be taken into consideration are whether the defendant makes sales, solicits or engages in business in the state, serves the state's markets, designates an agent for service of process, holds a license, or is incorporated there." *Id.*

In order for a court to exert specific jurisdiction in accordance with due process, a nonresident defendant must have "'minimum contacts' with the forum state such that the assertion of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006) (quoting *Int'l Shoe*, 326 U.S. at 315).  The Ninth Circuit employs a three-part test to determine whether the defendant has such minimum contacts with a forum state. First, the "nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum," thereby invoking the benefits and protections of the forum state.  *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 418 (9th Cir. 1997) (quoting *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1998)).  Second, the claim must "arise[] out of or result[] from the defendant's forum-related activities," and third, the exercise of personal jurisdiction over the defendant must be reasonable. *Pebble Beach Co.*, 453 F.3d at 1155.  The plaintiff bears the burden of proving the first two conditions. *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008).  If the plaintiff carries this burden, "the defendant must come forward with a 'compelling case' that the exercise of jurisdiction would not be reasonable." *Id.*  (citing *Schwarzenegger*, 374 F.3d at 802).

The plaintiff bears the burden of establishing the district court's personal jurisdiction over the defendant. *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1128-29 (9th Cir. 2003).  If a district court acts on the defendant's motion to dismiss without holding an evidentiary

United States District Court
For the Northern District of California

1    hearing, the plaintiff "need only demonstrate facts that if true would support jurisdiction over the

2    defendant." *Id.* at 1129 (citation omitted).  Unless directly contravened, the plaintiff's version of the

3    facts is taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved

4    in the plaintiff's favor for purposes of deciding whether a prima facie case for personal jurisdiction

5    exists.  *Id.* (citation omitted); *see also Bancroft*, 223 F.3d at 1087.

7    **2.      Motion to Dismiss for Failure to State a Claim**

8            Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it

9    fails to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion to dismiss,

10   the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl.*

11   *Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007).  While courts do not require "heightened

12   fact pleading of specifics," *id.*, a plaintiff must provide "more than labels and conclusions, and a

13   formulaic recitation of the elements of a cause of action will not do," *id*. at 1965.  Plaintiff must allege

14   facts sufficient to "raise a right to relief above the speculative level." *Id.*  In deciding whether the

15   plaintiff has stated a claim upon which relief can be granted, the Court must assume that the plaintiff's

16   allegations are true and must draw all reasonable inferences in the plaintiff's favor. *See Usher v. City*

17   *of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).  However, the court is not required to accept as true

18   "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."

19   *St. Clare v. Gilead Scis., Inc.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

20           If the Court dismisses the complaint, it must then decide whether to grant leave to amend. The

21   Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request

22   to amend the pleading was made, unless it determines that the pleading could not possibly be cured by

23   the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal

24   quotation marks omitted).

**United States District Court**
For the Northern District of California

# DISCUSSION

### 1.     Defendants' Motions for Sanctions

Defendants SCI and Alderwoods seek sanctions against plaintiffs in the form of an award of $35,532.23 in attorneys' fees.  Defendants accuse plaintiffs of engaging in forum shopping by filing their California claims in *Prise II* and subsequently dismissing that action and refiling *Bryant II* and *Helm* in state court.  Plaintiffs respond that they proceeded in this manner because they were attempting to have their state claims mirror the federal actions as closely as possible.  They point out that they originally sought to have all their claims against all defendants heard in the same case, but they refiled different actions after Judge Conti ruled in defendants' favor in *Prise I*.

The Court finds that plaintiffs have offered a plausible reason for filing and then voluntarily dismissing *Prise II*.  Plaintiffs filed *Prise II* after Judge Conti dismissed their California claims from *Prise I*; they filed *Bryant II* and *Helm* after Judge Conti held that joinder of claims against SCI and Alderwoods was improper.  The docket in *Prise II* reflects that plaintiffs voluntarily dismissed that case before the court had issued any substantive decisions.  Their dismissal of *Prise II* therefore does not appear to have been an attempt to escape unfavorable rulings.  Accordingly, the Court DENIES defendants' motions for sanctions.

### 2.     SCI's Motion to Dismiss Based on its Status as a Holding Company

SCI contends that the *Bryant II* complaint should be dismissed as to SCI because Judge Conti has already determined in *Prise I* that SCI is merely a holding company and therefore it cannot be an "employer" for wage and hour purposes.  The Court disagrees with SCI both on its characterization of Judge Conti's rulings and its contention its status as a holding company is dispositive of the issue of liability.

SCI contends that in three separate rulings in *Prise I*, Judge Conti determined that SCI is a holding company with no employees.  The Court has reviewed the portions of the *Prise I* hearing

1   transcripts cited by SCI and finds that, while there was discussion of SCI's corporate structure at the

2   hearings before Judge Conti, none of the cited portions demonstrates that Judge Conti held that SCI is

3   a holding company. *See* Defs' Request for Judicial Notice, ex. A (8:18-21, 20:19-23:18), ex B (2:2-5,

4   3:10-12, 19-24, 4:1-5, 9:22-10:5, 10:14-24, 11:5-9, 11:21-25, 12:1-2 16:23-17:7), ex. C (2:2-4, 2:23-25,

5   3:1-20, 4:2-11).

6       SCI is also incorrect in its categorical assertion that a holding company cannot be liable for the

7   acts of its subsidiaries.  As the Court will discuss in more detail in the following discussion on personal

8   jurisdiction, the issue of whether SCI can be held liable for its subsidiaries depends on, *inter alia*, the

9   type and degree of control it exercises over those entities, not on whether it is accurate to call SCI a

10  holding company.  The Court DENIES SCI's motion on this issue to the extent SCI argues (1) that

11  Judge Conti has made a ruling on SCI's corporate structure that has preclusive effect in this case and

12  (2) that if SCI establishes it is a holding company, plaintiffs' claims fail as a matter of law.

13

14  **3.     *Bryant II* Defendants' Motion to Dismiss for Lack of Personal Jurisdiction**

15      *Bryant II* defendants SCI, Eastern Support, Houston Market Support, Jane Jones, Gwen

16  Petteway, Thomas Ryan and Curtis Briggs move to dismiss plaintiffs' complaint for lack of personal

17  jurisdiction.

18

19      **A.     SCI**

20      SCI contends that it does not have sufficient contact with California to warrant this Court's

21  exercise of general jurisdiction over it.  Plaintiffs respond that SCI's own contacts in this state and those

22  of its subsidiaries make this Court's exercise of jurisdiction proper.

23

24          **i.     SCI's independent contacts with California**

25      SCI contends that it is a holding company that has no employees, conducts no business in

26  California, and neither owns property nor pays taxes in this state.  *See* Key Decl. ¶¶ 4-10.  Plaintiffs

27

28                                          10

**United States District Court**
For the Northern District of California

United States District Court

For the Northern District of California

dispute this characterization of SCI's activities and contend that SCI has extensive contacts with this forum.  Much of plaintiffs' evidence in support of this point, however, contains no information about SCI's independent activities in California.  *See, e.g.*, Cressman Decl., at ex. B, part 28 at 8 (SCI's Form 10-K filing with the Securities and Exchange Commission for fiscal year 2008).[10]  Nor does plaintiffs' evidence support their contention that SCI has had continuous contacts with California.  Plaintiffs point out that SCI has been named as a defendant in 42 lawsuits in California, *see* Cressman Decl, ex. C (interrogatory response No. 19), but provide no information about whether courts in those cases determined that the exertion of personal jurisdiction over SCI was proper.  Plaintiffs cite one case in this district, *Guzman v. SCI*, No. C 01-4812 PJH (N.D. Cal. May 9, 2002), in which the court found that plaintiff had made an adequate prima facie showing of specific jurisdiction over SCI.  *See* Cressman Decl., ex. V.  The one-page order in *Guzman* deciding this issue based on "reasons stated at the hearing" contains no analysis and therefore does not offer guidance to this Court.  *Id.*  Finally, citing the deposition testimony of SCI's CEO, Thomas Ryan, plaintiffs claim that SCI officers and directors have been involved in negotiations for property acquisitions in California.  In fact, Ryan testified that he had been "involved in . . . discussions" regarding a property deal in California that was not consummated.  *See* Cressman Decl., ex. A (Ryan Depo.), Tr. 100:17-20.  The cited testimony does not indicate whether Ryan was acting on behalf of SCI or its subsidiaries.

Plaintiffs do cite some evidence of SCI's contacts with California (rather than those of its subsidiaries), but these contacts are far from substantial.  Plaintiffs rely on court filings showing that SCI initiated nine lawsuits in California, in Ventura County Superior Court.  *See* Cressman Decl., ex. T.  SCI filed all of these lawsuits in 1998 and 1999.  This litigation therefore does not establish that SCI

---

[10] SCI states in its Form 10-K filing with the Security and Exchange Commission for fiscal year 2008: "[W]e employed 13,581 (13,550 in North America) individuals on a full-time basis and 7,190 (7,180 in North America) individuals on a part-time basis.  Of the full-time employees, 12,820 were employed in the funeral and cemetery operations and 761 were employed in corporate or other overhead activities and services."  Cressman Decl., at ex. B, part 28 at 8.  SCI states in its Form 10-K that in that filing it does not distinguish between SCI and its subsidiaries.  *Id.* at 5.  It is therefore not warranted to assume, as plaintiffs contend, that statements in the 10-K constitute admissions by SCI that it employed individuals nationwide.

has "continuous and systematic" contacts with California. *See Bancroft*, 223 F.3d at 1087.  Plaintiffs also submit evidence that SCI is a debtor in California, has federal identification numbers listing California addresses for SCI, is listed as an asset holder of less than $1000 of unclaimed property in California, and held a board of directors meeting in California in 2007. *See* Cressman Decl., exs. R, S, U, A (Tr. 83:13-84:14).  These limited contacts are not "of the sort that approximate physical presence" in California. *See Bancroft*, 223 F.3d at 1087.  Plaintiffs cite no evidence that any of the factors identified in *Bancroft* – making sales in California, soliciting or engaging in business in California, serving California's markets, designating an agent for service of process, holding a license, or being incorporated in California – are present here.  Accordingly, the Court finds that plaintiffs have not met their burden in alleging facts that, if true, would show SCI has contacts with California that are sufficiently "substantial" or "continuous and systematic" that this Court's exercise of general jurisdiction over SCI would comport with due process. *See id.*

Plaintiffs also contend that this Court has specific jurisdiction over SCI, but its arguments on this point pertain to the activities of SCI's subsidiaries in California.  Accordingly, the Court next turns to plaintiffs' contention that the contacts of SCI's subsidiaries in this state are attributable to SCI.

### ii.      Attribution of subsidiaries' acts to SCI

Plaintiffs contend that the SCI's California subsidiaries' contacts with this forum may be imputed to SCI because the subsidiaries are SCI's agents.[11]  Where, as here, a defendant's alleged contacts with a forum are through its corporate subsidiaries, the Court must preliminarily determine whether the subsidiaries' contacts are properly attributed to the defendant.  In order to prove that a parent corporation is directly liable for the acts of its subsidiaries, a plaintiff must do more than show that the parent and subsidiary share a board of directors. *See United States v. Bestfoods*, 524 U.S. 51, 69 (1998) (quoting *Am. Protein Corp. v. AB Volvo*, 844 F.2d 56, 57(2d Cir. 1988)) ("[I]t is entirely

---

[11]  Because the Court finds that plaintiffs have sufficiently alleged that the subsidiaries are SCI's agents for purposes of jurisdiction, the Court does not reach plaintiffs' other theories for attributing the subsidiaries' contacts to SCI: joint employer, alter ego, and single employer.

**United States District Court**
For the Northern District of California

1    appropriate for directors of a parent corporation to serve as directors of its subsidiary, and that fact alone

2    may not serve to expose the parent corporation to liability for its subsidiary's acts."). A parent

3    corporation may be directly involved in the activities of its subsidiaries without incurring liability so

4    long as that involvement is "consistent with the parent's investor status." *Bestfoods*, 524 U.S. at 72.

5    "Appropriate parental involvement includes: "monitoring of the subsidiary's performance, supervision

6    of the subsidiary's finance and capital budget decisions, and articulation of general policies and

7    procedures." *Id.*

8         On the other hand, a parent company can be held liable for its subsidiary – and the local

9    subsidiary's contacts with the forum may be imputed to the parent corporation – if the parent and

10   subsidiary are not really separate entities, or one acts as the general agent of the other. *El-Fadl v. Cent.*

11   *Bank of Jordan*, 75 F.3d 668, 676 (D.C. Cir. 1996)). A subsidiary acts as the general agent of the parent

12   corporation in the forum state when the subsidiary performs services that are "sufficiently important to

13   the foreign corporation that if it did not have a representative to perform them, the corporation's own

14   officials would undertake to perform substantially similar services." *Chan v. Soc'y Expeditions, Inc.*,

15   39 F.3d 1398, 1405 (9th Cir. 1994) (quoting *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d

16   406, 423 (9th Cir. 1977)) (relevant factors include percentage of parent's business that came from

17   subsidiary and whether subsidiary was the only agent in the forum for the parent corporation).

18        Here, plaintiffs argue that the SCI subsidiaries operating in California perform vitally important

19   services for SCI, such that without these entities, SCI would have to take on these functions itself in

20   order to run its business in California. Specifically, Western Market Support and SCI Cooperative

21   provide management, administrative, accounting, and data processing services to SCI's "deathcare"

22   businesses in California. The Court agrees that these functions distinguish the SCI subsidiaries from

23   holding companies that merely hold assets and perform no services or activities for the parent company

24   in the forum state.

25        In addition, plaintiffs cite evidence that SCI's direct involvement in its California businesses

26   (owned by SCI subsidiary California Cemeteries and Funeral Services, LLC) extends beyond that of a

27

28

United States District Court
For the Northern District of California

1    mere investor. For example, plaintiffs' citation to the employee handbook supports their argument that

2    SCI sets policies for employees in California.[12]   The "Dignity Village" intranet suggests that SCI

3    maintains close communication with California employees.  SCI also funds the retirement and benefit

4    plans of California employees.   In addition, SCI's imposition of a national SCI brand, Dignity

5    Memorial, on its companies in California and its use of a national SCI training program, Dignity

6    University, suggest that SCI controls the manner in which SCI's California businesses provide mortuary

7    and funeral services.  This evidence supports plaintiffs' contention that SCI exercises close control of

8    its subsidiaries' daily operations.

9         Finally, SCI concedes that its line of business is "deathcare" services and that its subsidiaries

10   own and operate funeral homes, mortuaries, crematoriums, and cemeteries.  The Court agrees with

11   plaintiffs that defendants have not provided a basis "for distinguishing between the business of the

12   parent and the business of the subsidiaries." *Bellomo v. Penn. Life Co.*, 488 F. Supp. 744, 746 (C.D.

13   N.Y. 1980) (cited in *Harris Rutsky*, 328 F.3d at 1135 (9th Cir. 2003)).

14        Accepting as true plaintiffs' version of those facts that are not directly contravened, and, where

15   reasonable, resolving conflicts between the facts in plaintiffs' favor, the Court finds that plaintiffs have

16   made a prima facie showing that SCI Western, SCI Cooperative, and California Cemeteries and Funeral

17   Services, LLC are the general agents of SCI for purposes of personal jurisdiction.  There is no question

18   that these subsidiaries have such substantial and continuous contacts with California that they are

19   subject to this Court's exercise of general jurisdiction.  Accordingly, the Court concludes that plaintiffs

20   have made a sufficient showing that the subsidiaries' contacts with California are attributable to SCI,

21   making SCI subject to the general jurisdiction of this Court.  SCI's motion is therefore DENIED on this

22   issue.

23   _____

24        [12]  SCI points out that the handbook specifies that when it refers to "Company," it means "the
     organization that owns and/or operates your place of employment," and that plaintiffs have produced
25   no evidence of which handbooks were produced for which places of employment, or that the policies
     set forth in the handbooks are uniform.  Cressman Decl., ex. B, part 4 at 273.  Nonetheless, at this stage
26   of the proceedings, plaintiffs are entitled to the reasonable inference that SCI controls the content of
     employee handbooks and that the handbooks cited by plaintiffs are substantially similar to those
27   distributed to employees of SCI's California businesses.

28                                                      14

United States District Court
For the Northern District of California

## B.        Eastern Market Support and Houston Market Support

Eastern Market Support and Houston Market Support move to dismiss plaintiffs' complaint for lack of personal jurisdiction.  Plaintiffs' only argument in this regard is that these entities "operate in conjunction" with SCI, SCI Cooperative, and Western Market Support.  This argument fails for several reasons.  First, plaintiffs cite no authority in support of their contention that simply operating in conjunction with other SCI entities could serve as a basis for this Court to exercise jurisdiction over them.  Second, assuming for the sake of argument that plaintiffs are correct in this regard, the evidence they cite is not probative of the level of these subsidiaries' involvement in activities in California. Plaintiffs rely on SCI's Form 10-K filing, which states that the "primary functions of the support centers are to help facilitate the execution of corporate strategies, coordinate communications between field and corporate offices, and serve as liaisons for the implementation of policies and procedures."  Cressman Decl., ex. B, part 28 at 5.  This text gives no information about how the subsidiaries interact with each other.  Plaintiffs also cite a declaration by Judith Marshall, who is a senior legal assistant at SCI Cooperative, *see* Marshall Decl. ¶ 2, for the proposition that all three support centers – Eastern, Western, and Houston – provide human resources services at all business locations.  Plaintiffs' characterization of the Marshall declaration is perplexing.  Marshall states that the support entities provide services only in their own regions.[13]  Plaintiffs have put forward no evidence to rebut the affidavits of Robert Pisano and Gwen Petteway, which state that these entities have no contacts in California.  Allowing plaintiffs more time to develop the record on this issue is unlikely to be fruitful as plaintiffs have already had ample opportunity to do so – jurisdictional discovery has been ongoing since August 2008. Accordingly, the motions of Eastern Market Support and Houston Market Support to dismiss for lack of personal jurisdiction are GRANTED.

---

[13]  Marshall states in her declaration, "Each of these entities has a Managing Services Agreement with the locations in their region of the country that state that they will provide all . . . services for the locations.  Consistent with the Managing Services Agreement, these entities are responsible for fielding questions related to human resources issues for the companies for which they provide services." Marshall Decl. ¶ 4.

15

### C.     Individual defendants

Jane Jones, Gwen Petteway, Thomas Ryan and Curtis Briggs move to dismiss plaintiffs' complaint for lack of personal jurisdiction.  Ryan is president and CEO of SCI, Jones is vice president of human resources for SCI, Briggs is senior corporate counsel at SCI Cooperative, Petteway is a director of human resources at SCI Cooperative.  The foregoing discussion has established that this Court has general jurisdiction over SCI.  SCI Cooperative does not contest jurisdiction.  Plaintiffs allege that Jones, Petteway, Ryan, and Briggs created, oversaw, and implemented the allegedly unlawful employment practices at issue in this case.  *See, e.g.*, Complaint ¶¶ 129, 130, 154, 180, 207.  The Court agrees with plaintiffs that the individual defendants' alleged involvement with the purportedly unlawful acts alleged in the complaint is sufficient to support this Court's exercise of specific jurisdiction over them.[14]  Accordingly, defendants' motion is DENIED on this issue.

### 4.     Defendants' Motion to Dismiss for Failure to State a Claim

### A.     Employer status

The *Bryant II* defendants argue that plaintiffs' complaint must be dismissed because none of the defendants constitute plaintiffs' "employers" under California law.

The Court notes that both parties cite evidence outside the complaint in support of their arguments.  "As a general rule, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion."  *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (citation omitted).  A district court may consider material that is "properly submitted as part of the complaint"; or, if the documents are not physically attached to the complaint, they may be considered

---

[14] Defendants argue, in their reply brief, that the fiduciary shield doctrine precludes this Court's exercise of specific jurisdiction over the individual defendants.  This argument is not properly raised and in any event fails as plaintiffs allege that the individuals have participated directly in the employment violations.  *See Wolf Designs, Inc. v. DHR Co.*, 322 F. Supp. 2d 1065, 1072 (C.D. Cal. 2004) ("Under the fiduciary shield doctrine a person's mere association with a corporation that causes injury in the forum state is not sufficient in itself to permit that forum to assert jurisdiction over the person.  However, the corporate form may be ignored in two cases: (1) where the corporation is the agent or alter ego of the individual defendant, or (2) by virtue of the individual's control of, and direct participation in the alleged activities.") (internal citations omitted).

if the documents' "authenticity is not contested and the plaintiff's complaint necessarily relies on them." *Id.* (citations and ellipses omitted).  A court may also take judicial notice of matters of public record. *Id.* at 689 (citation omitted).[15]  In deciding defendants' motion to dismiss pursuant to Rule 12(b)(6), the Court will not consider evidence that does not fit into one of the foregoing categories.

### i.   Corporate defendants

SCI, SCI Cooperative, and Western Market Support argue that plaintiffs have failed to allege facts in support of their claim that they employed plaintiffs.  The provisions of the California Labor Code applicable in this case do not define the term "employer."[16]  Absent a statutory directive to the contrary, courts must define this term according to its common-law definition. *Reynolds v. Bement*, 36 Cal. 4th 1075, 1087 (2005).  In California, "the principal test of an employment relationship is whether the person to whom service is rendered has the right to control the manner and means of accomplishing the result desired." *S.G. Borello & Sons, Inc. v. Dep't of Indus. Relations*, 48 Cal. 3d 341, 350 (1989) (citing *Tieberg v. Unemployment Ins. App. Bd.*, 2 Cal. 3d 943, 946 (1970)); *see also Bradley v. Cal. Dep't of Corrs. and Rehab.*, 158 Cal. App. 4th 1612, 1626 (2008) ("The prevailing view is to consider the totality of the circumstances, reflecting upon the nature of the work relationship between the parties, and placing emphasis on the control exercised by the employer over the employee's performance of employment duties.  Consequently, when a statute fails to define the term 'employee,' courts routinely look at the common-law definition for guidance, focusing on the amount of control the employer exercises over the employee.") (citing *Vernon v. State*, 116 Cal. App. 4th 114, 124-25 (2004)).  "Strong evidence of the right to control is shown by the right to discharge the worker." *Singh v. 7-Eleven, Inc.*,

---

[15]  The Court does not convert the instant motion into a summary judgment motion as neither party has made such a request and this Court has not given notice that it would convert this motion into a summary judgment motion.

[16]  The relevant Labor Code provisions are § 201 (payment of wages upon discharge or layoff); § 202 (payment of wages upon resignation); § 203 (timely payments); §§ 226.7, 512 (meal and rest breaks); and §§ 226(a), 226.3 (itemized wage statements).

United States District Court
For the Northern District of California

1    2007 WL 715488, at *7 (N.D. Cal. Mar. 8, 2007) (citing *Isenberg v. Cal. Employment Stabilization*

2    *Comm'n*, 30 Cal. 2d at 39 (1947)).[17]

3         Here, plaintiffs contend that SCI "maintained control and authority, directly or indirectly, over

4    all functions" at other SCI entities discussed in this order.  Complaint ¶ 99.  Plaintiff also allege that SCI

5    has the authority to create policies regarding compensation and hours that purportedly violate the Labor

6    Code, *see* Complaint ¶ 100, and that it makes decisions concerning hiring and firing employees, *see*

7    Complaint ¶ 112.  According to plaintiffs, SCI controlled plaintiffs' work schedules, rate and method

8    of payment and benefits.  Complaint ¶¶ 113, 114, 117.

9         Plaintiffs also maintain that SCI Cooperative was plaintiffs' employer.  SCI Cooperative

10   purportedly "has authority to hire or fire" plaintiffs, *see* Complaint ¶ 80; and "has authority to establish

11   . . . conditions" of plaintiffs' employment, including their work schedules, *see* Complaint ¶¶ 81, 85.  It

12   also helped create the policies at issue in this case that allegedly violate the Labor Code.  Complaint

13   ¶ 86.

14        Finally, plaintiffs argue that SCI Western was plaintiffs' employer.  Plaintiffs contend that SCI

15   Western uses the Dignity University training system to control the services that plaintiffs provide,

16   ─────────────────────

17         [17]  The parties dispute whether the corporate defendants can be held liable as "joint employers"
18   for the purported Labor Code violations at issue in this case.  This term, which comes from the federal
     labor law context, refers to a theory whereby workers can be simultaneously employed by two
19   businesses because of the close ties between the two entities.  *See EEOC v. Pacific Maritime Ass'n*, 351
     F.3d 1270, 1275 (9th Cir. 2003).  Defendants contend that in *Reynolds v. Bement*, the California
20   Supreme Court held that joint employer liability is limited to the context of the FLSA.  In fact, *Reynolds*
     did not directly address joint employer liability.  *Reynolds* held that because the FLSA provides an
21   express definition of "employer," while the relevant provision of the Labor Code did not, case law
     interpreting the FLSA's definition of this term is not pertinent to construing the same term in the Labor
22   Code.  *See Reynolds*, 36 Cal. 4th at 1088.  It does not follow, as defendants contend, that defendants
     cannot be liable as joint employers for Labor Code violations.  The Court finds that nothing in *Reynolds*
23   prohibits this Court from considering whether the corporate defendants were the joint employers of
     plaintiffs.  Indeed, post-*Reynolds* cases have assumed or held that status as a joint employer can give
24   rise to liability for Labor Code violations.  *See, e.g.*, *Cervantez v. Celestica Corp.*, __ F. Supp. 2d __,
     2009 WL 1482228, at *3 (C.D. Cal. May 6, 2009); *Ontiveros v. Zamora*, 2009 WL 425962, at *5-6
25   (E.D. Cal. Feb. 20 2009); *Perry v. Upper Deck Co., LLC*, 2007 WL 1449797, at *4 (S.D. Cal. May 11,
     2007).
26         In any event, the parties' focus on joint employer status is misplaced.  The more direct approach
     is to consider whether each entity controlled the performance of plaintiffs' work duties and thus
27   qualifies for "employer" status according to the common-law definition.

28                                                    18

United States District Court
For the Northern District of California

*see* Complaint ¶ 28, and helped create the policies that allegedly violate the Labor Code, *see* Complaint ¶ 32. According to plaintiffs, SCI Western has authority to make decisions about hiring and firing plaintiffs. Complaint ¶ 35. SCI Western also allegedly has authority to set plaintiffs' work schedules and the conditions of their employment. Complaint ¶ 46.

Defendants argue that none of these entities are listed as plaintiffs' employer on plaintiffs' W-2 tax forms. *See* Decl. of Liana Jensen in Supp. of Defs. Mot. to Dismiss. [Docket No. 136] This argument fails for at least two reasons. First, defendants offer no basis for the Court to consider this evidence on a motion to dismiss pursuant to Rule 12(b)(6). Second, defendants cite no authority for the proposition that the designation of an "employer" on a tax form is dispositive of the issue of whether the entity constitutes an employer for purposes of California' Labor Code.

Defendants also argue that Judge Conti held in *Prise I* that the corporate entities named as defendants in this case were not plaintiffs' employers. As discussed above, *see* Section 2, the Court has reviewed the portions of the hearing transcript cited by defendants and concludes that Judge Conti did not reach any conclusions on this issue that have preclusive effect on this Court.

In sum, plaintiffs allege that each of these entities (1) controlled the manner in which plaintiffs provided mortuary and funeral services and (2) had authority to terminate plaintiffs' employment. Drawing all reasonable inferences in plaintiffs' favor, the Court concludes that based on these allegations, plaintiffs could prove that SCI, SCI Western, and SCI Cooperative exercised sufficient control over the performance of plaintiffs' work that these entities were plaintiffs' "employers" for purposes of California's Labor Code.

Accordingly, defendants' motion to dismiss plaintiffs' claims against the *Bryant II* corporate entities on this basis is DENIED.

### ii.    Individual defendants

Defendants argue that Jane Jones, Gwen Petteway, Thomas Ryan, and Curtis Briggs cannot be liable for the Labor Code violations alleged by plaintiffs. Individuals cannot be held liable for failure

1   to pay wages merely on the basis of their status as corporate officers. *Reynolds*, 36 Cal. 4th at 1087.

2   Section 558 of the Labor Code does, however, allow for such individuals to be held personally liable

3   if they "cause" Labor Code violations to occur. *See* Cal. Labor Code § 558(a) ("Any employer *or other*

4   *person* acting on behalf of an employer who violates, or causes to be violated, a section of this chapter

5   or any provision regulating hours and days of work in any order of the Industrial Welfare Commission

6   shall be subject to a civil penalty . . . .") (emphasis added); *see also Reynolds*, 36 Cal. 4th at 1089 (citing

7   § 558(a)).

8          Plaintiffs allege that each of the individual defendants helped create the purportedly illegal

9   employment policies at issue in this case. *See* Complaint ¶¶ 129 (Jones), 154 (Petteway), 180 (Ryan),

10  207 (Briggs). Plaintiffs also contend that the individual defendants set plaintiffs' work schedules and

11  compensation. *See* Complaint ¶¶ 133-34 (Jones), 159 (Petteway), 184 (Ryan), 211 (Briggs).

12  Accordingly, the Court finds that plaintiffs have sufficiently pled that the individual defendants caused

13  the Labor Code violations at issue here and DENIES defendants' motion to dismiss on this issue.

14

15          **B.       Preemption**

16                  **i.       Federal preemption**

17          Defendants argue that plaintiffs' common law claims – for unjust enrichment, conversion, fraud,

18  misrepresentation, breach of contract, breach of the implied covenant of good faith and fair dealing, and

19  quantum meruit – and consequently, plaintiffs' claim for punitive damages are preempted by the FLSA.

20  The Ninth Circuit instructs that there are three types of preemption:

21          (1) *express preemption* – where Congress explicitly defines the extent to which its
            enactments preempt state law; (2) *field preemption* – where state law attempts to regulate
22          conduct in a field that Congress intended the federal law exclusively to occupy; and (3)
            *conflict preemption* – where it is impossible to comply with both state and federal
23          requirements, or where state law stands as an obstacle to the accomplishment and
            execution of the full purposes and objectives of Congress.
24
    *Williamson v. Gen. Dynamics Corp.*, 208 F.3d 1144, 1149 (9th Cir. 2000) (citations omitted).
25
           Express preemption is not relevant here because the FLSA does not expressly preempt state law.
26
    The Ninth Circuit held in *Williamson* that field preemption is likewise inapplicable because "the FLSA
27

28                                                      20

1    contains a 'savings clause' that enables states and municipalities to enact more favorable wage, hour,

2    and child labor legislation." *Id.* at 1150 (citing 29 U.S.C. § 218(a)).  *Williamson* reasoned that the

3    savings clause indicates that the FLSA "does not provide an exclusive remedy" and is therefore

4    "evidence that Congress did not intend to preempt the entire field." *Id.* at 1151.  As for the first type

5    of conflict preemption, defendants do not offer any reason that compliance with both state law and the

6    FLSA would be impossible.  At issue is the second type of conflict preemption: whether plaintiffs'

7    common law claims stand as an obstacle to the purposes of Congress, as evidenced in the FLSA.

8            Plaintiffs argue that their common law claims do not conflict with the FLSA because they seek

9    relief for violations that are not covered by the federal statute.  According to plaintiffs, they "seek relief

10   for defendants' failure to compensate plaintiffs for all hours worked[,] regardless of whether plaintiffs

11   were [] paid the minimum wage and regardless of whether plaintiffs worked overtime." *Bryant II* Opp.

12   at 9.  The Court agrees with plaintiffs that state laws do not stand as an obstacle to the enforcement of

13   the FLSA if the state laws regulate conduct outside the ambit of the federal statue.  Plaintiffs' common

14   law claims are therefore not preempted if plaintiffs seek to hold defendants liable for conduct that is not

15   covered by the FLSA.  The factual basis for plaintiffs' contention that they were not adequately

16   compensated for their work (apart from unpaid overtime) is not evident from their complaints, however.

17   If plaintiffs choose to file amended complaints, they must allege facts in support of their allegation that

18   they were not compensated for all the hours they worked.

19           The Court notes that plaintiffs' characterization of their complaint is not entirely accurate.  For

20   example, in their fourth cause of action, for conversion, plaintiffs seek "all earnings *and overtime* due."

21   Complaint ¶ 272 (emphasis added).  In their fifth cause of action, for fraud, they allege that defendants

22   falsely represented that "*overtime* is defined as any hours worked in excess of 40 hours per week as

23   mandated by federal law."  Complaint ¶ 278 (emphasis added).  Thus, it appears that plaintiffs' common

24   law claims are at least partially duplicative of claims for unpaid overtime that could be brought under

25   the FLSA.  *See* 29 U.S.C. § 207(a).

26           Plaintiffs argue that even common law claims that are duplicative of the FLSA are not

27

28                                                          21

1   preempted.  The Ninth Circuit rejected this argument in *Williamson*.  "Claims that are directly covered

2   by the FLSA (such as overtime and retaliation disputes) must be brought under the FLSA."  *Williamson*,

3   208 F.3d at 1154.  *Accord Anderson v. Sara Lee Corp.*, 508 F.3d 181, 194-95 (4th Cir. 2007) (collecting

4   district court cases "deeming state claims to be preempted by the FLSA where those claims have merely

5   duplicated FLSA claims.").

6       Plaintiffs make much of the following statement in *Williamson*:

7       If the district court is correct in arguing that (1) [the FLSA] covers [the state-law] claims
        and (2) the FLSA is the exclusive remedy for claims duplicated by or equivalent of rights
8       covered by the FLSA, then the [state-law] claims would be an obstacle to the
        enforcement of the FLSA. The district court's assumptions, however, are incorrect.

9
*Id.* at 1152.  However, in *Williamson*, the Ninth Circuit found that the state law at issue was not covered
10
by the FLSA; it was not a duplicative  claim and thus was not preempted.  *Id.* at 1153.  Because the
11
underlying claim in *Williamson* did not involve "[c]laims that are directly covered by the FLSA (such
12
as overtime and retaliation disputes) [which] must be brought under the FLSA," they were not
13
preempted.[18]
14
15      In this case, plaintiffs' claims for unpaid overtime are directly covered by the FLSA.  While the

16  FLSA's savings clause allows states and municipalities to enact wage and hour legislation that is *more*

17  favorable to workers than the FLSA, the federal statute preempts common law claims that seek remedies

18  for rights protected by the FLSA (such as minimum wage and overtime pay).

19      Accordingly, defendants' motion is GRANTED with prejudice insofar as plaintiffs' common-law

20

21      [18]   Some district courts in the Ninth Circuit have noted the apparent contradiction in
*Williamson* between its holding that the FLSA does not provide an exclusive remedy and its statement
22  that claims directly covered by the FLSA must be brought under that statute.  Reasoning that the
    "directly covered" language in *Williamson* is *dictum*, these courts have held that the FLSA does not
23  preempt state-law UCL claims.  *See, e.g.*, *Takacs v. A.G. Edwards & Sons, Inc.*, 444 F. Supp. 2d 1100,
    1117 (S.D. Cal. 2006); *Bahramipour v. Citigroup Global Markets, Inc.*, 2006 WL 449132, at *4 (N.D.
24  Cal. Feb. 22, 2006); *Aguayo v. Oldenkamp Trucking*, 2005 WL 2436477, at *10 (E.D. Cal. Oct. 3,
    2005); *Barnett v. Washington Mut. Bank, FA,* 2004 WL 2011462, at *6-7 (N.D. Cal. Sept. 9, 2004); *see*
25  *also Medina v. Chas Roberts Air Conditioning, Inc.*, 2006 WL 2091665, at *5-6 (D. Ariz. July 24, 2006)
    (holding that the FLSA does not preempt claim under Arizona statute for retaliatory discharge).  While
26  plaintiffs' tenth cause of action is for unlawful business practices in violation of California's Unfair
    Competition Law (the "UCL"), Cal. Bus. & Prof. Code §§ 17200, et seq., these authorities are not
27  directly relevant here because defendants argue only that plaintiffs' *common law* claims are preempted.

28

1   causes of action that are duplicative of the FLSA are dismissed without leave to amend.  With regard

2   to plaintiffs' common law causes of action that are not based on rights granted by the FLSA, defendants'

3   motion is GRANTED with leave to amend.  Plaintiffs must provide some factual basis for their

4   allegation that they are owed wages beyond unpaid overtime.

5

6                    **ii.        State preemption**

7        Defendants argue that plaintiffs' claims are preempted by California Labor Code provisions

8   regulating wage and hour violations.  The "new right-exclusive remedy" doctrine provides that:

> [W]here a statute *creates* new rights and obligations not previously existing in the
> common law, the express statutory remedy is deemed to be the exclusive remedy
> available for statutory violations, unless it is inadequate.  However, when the statute
> merely *recognizes* a cause of action (because the claim had a preexisting common law
> analogue), then all forms of relief granted to civil litigants generally, including
> appropriate punitive damages, are available unless a contrary legislative intent appears.

*Brewer v. Premier Golf Props.*, 168 Cal. App. 4th 1243, 1252 (2008) (internal citations omitted)

(emphasis added in *Brewer*).  In the labor law context, regulations requiring employers to provide meal

breaks and rest breaks and regulating pay stubs and minimum wages "create new rights and obligations

not previously existing in the common law."  *Id.* at 1252-54.  Any common law claims premised on

these violations are therefore preempted.

        Plaintiffs do not dispute that common law claims that seek remedies for rights created by statute

and not previously existing in common law are preempted.  Plaintiffs contend, however, that they seek

payment for hours they worked but for which they were not compensated, and that their right to this

compensation was established by the common law.  Plaintiffs' argument fails because they do not allege

any specific wrongful conduct other than the alleged Labor Code violations.  As noted in the discussion

of federal preemption, plaintiffs do not explain the factual basis for their contention that they were not

compensated for all the hours that they worked.  Accordingly, plaintiffs' common law claims are

DISMISSED with leave to amend. If plaintiffs choose to file an amended complaint realleging these

causes of action, they must allege facts supporting their claim that they are owed unpaid wages in

addition to the wages that purportedly were not paid in violation of the Labor Code.

28                                        23

1      **C.      Exhaustion**

2          Defendants argue that plaintiffs' claim for failure to furnish timely and accurate wage statements,

3  Cal. Labor Code § 226(a) must be dismissed because plaintiffs have not alleged that they complied with

4  the statutory requirements imposed by the Labor Code Private Attorneys General Act of 2004

5  ("PAGA"), Cal. Labor Code §§ 2698 *et seq.*  Before an individual employee may file an action seeking

6  to recover *civil penalties* for violations of certain Labor Code provisions, the employee must comply

7  with PAGA's administrative procedures, which include providing notice to the Labor and Workforce

8  Development Agency (the "Agency") and waiting a prescribed period of time to permit the Agency to

9  investigate and to decide whether to cite the employer for the alleged violations.  Cal. Labor Code §§

10  2699.3(a)(1), 2699.3(a)(2)(B); *Caliber Bodyworks, Inc. v. Superior Court*, 134 Cal. App. 4th 365, 370

11  (2005).  In general, the employee retains only 25% of any civil penalty she recovers; the balance must

12  be returned to the Agency.  Cal. Labor Code § 2699(i).

13          Plaintiffs argue that they are not required to exhaust PAGA remedies for their § 226(a) claim

14  because they seek to recover statutory penalties that were available before PAGA was enacted.

15  Plaintiffs are correct that PAGA's exhaustion requirements apply only where the plaintiff seeks recovery

16  of a "civil penalty to be assessed and collected by" the Agency.  Cal. Labor Code § 2699(a).  They do

17  not apply in actions for statutory penalties that were recoverable directly by the employee before PAGA

18  was enacted.  *Caliber*, 134 Cal. App. at 377-78; *Dunlap v. Superior Court*, 142 Cal. App. 4th 330, 340

19  (2006); *see generally Cal. Practice Guide: Employment Litigation (The Rutter Group)* ¶¶ 17:760 *et seq.*

20          Plaintiffs' argument fails, however, because they seek penalties under § 226.3 of the Labor Code.

21  *See* Complaint ¶ 258.  Section 226.3 provides a *civil* penalty to be assessed by the Agency.  *See* Cal.

22  Labor Code § 226.3 ("In enforcing this section, the [Agency] shall take into consideration whether the

23  violation was inadvertent . . . .").  Plaintiffs cite no authority establishing that this civil penalty was

24  recoverable directly by employees before the enactment of PAGA.  Plaintiffs are therefore required to

25  allege compliance with PAGA's administrative procedures for recovery of civil penalties under § 226.3.

26          Accordingly, defendants' motion to dismiss is GRANTED with leave to amend.

27

28                                                              24

United States District Court
For the Northern District of California

1    **D.    Class Action Allegations**

2    Defendants move to dismiss or strike plaintiffs' class action allegations.[19]   They argue that

3  plaintiffs will not be able to prove that their class action satisfies the requirements of Federal Rule of

4  Civil Procedure 23 because it is brought under the laws of some 31 states other than California, as well

5  as Puerto Rico and the District of Columbia.  *See, e.g.*, Complaint ¶ 262.

6    The decision as to whether to certify a class is committed to the discretion of the district court

7  within the guidelines of Federal Rule of Civil Procedure 23.  *See* Fed. R. Civ. P. 23; *see also Cummings*

8  *v. Connell*, 316 F.3d 886, 895 (9th Cir. 2003).  A court may certify a class if a plaintiff demonstrates that

9  all of the prerequisites of Federal Rule of Civil Procedure 23(a) have been met, and that at least one of

10  the requirements of Federal Rule of Civil Procedure 23(b) have been met.  *See* Fed. R. Civ. P. 23; *see*

11  *also Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).

12    Rule 23(a) provides four prerequisites that must be satisfied for class certification: (1) the class

13  must be so numerous that joinder of all members is impracticable, (2) questions of law or fact exist that

14  are common to the class, (3) the claims or defenses of the representative parties are typical of the claims

15  or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests

16  of the class.  *See* Fed. R. Civ. P. 23(a).

17    A plaintiff must also establish that one or more of the grounds for maintaining the suit are met

18  under Rule 23(b), including (1) that there is a risk of substantial prejudice from separate actions; (2) that

19  declaratory or injunctive relief benefitting the class as a whole would be appropriate; or (3) that common

20  questions of law or fact predominate and the class action is superior to other available methods of

21  adjudication.  *See* Fed. R. Civ. P. 23(b).

22    Defendants argue that plaintiffs will not be able to establish the existence of common questions

23  of law or fact, *see* Rule 23(a)(2), or that common questions predominate, *see* Rule 23(b)(3).  Defendants

24

25  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

26    [19]   The parties dispute the propriety of deciding class certification on defendants' motion.  A
   recent Ninth Circuit decision, issued after oral argument in this case, clarified that "[a] defendant may

27  move to deny class certification before a plaintiff files a motion to certify a class."  *Vinole v.*
   *Countrywide Home Loans*, __F.3d__, 2009 WL 1926444, at *5 (9th Cir. July 7, 2009).

28

1   point out that the named plaintiffs in *Bryant II* and *Helm* were employed in California and bring claims

2   under California's wage and hour laws.  In defendants' view, plaintiffs' claims are not common to the

3   putative class, which consists of employees in 33 jurisdictions that have unique wage and hour laws.

4          The Court declines to decide the issue of class certification at this stage in the proceedings.

5   Defendants offer no analysis of the statutory schemes in question.  It is therefore difficult for this Court

6   to assess whether, as defendants contend, the various wage and hour statutes are so different that

7   plaintiffs' claims are not common to those of the putative class.  The Court finds that plaintiffs should

8   have an opportunity to show either that the legal questions are substantially similar across jurisdictions,

9   or that different jurisdictions' laws can reasonably be handled in sub-classes.  *See Zinser v. Accufix*

10  *Research Inst., Inc.*, 253 F.3d 1180, 1190 (9th Cir. 2001) (affirming trial court's denial of class

11  certification because, *inter alia*, plaintiff failed to present any trial plan for dealing with variances in

12  state law).

13         Accordingly, defendants' motion on this issue is DENIED without prejudice to reconsideration

14  at class certification.

15

16         **E.       Standing**

17         Defendants move to dismiss or strike plaintiffs' claims for alleged violations of wage and hour

18  laws from jurisdictions other than California.  According to defendants, the named plaintiffs do not have

19  standing to bring claims on behalf of employees who worked outside California.  To have standing to

20  sue as a class representative, a plaintiff  "must be a part of that class, that is, he must possess the same

21  interest and suffer the same injury shared by all members of the class he represents."  *See Epstein v.*

22  *MCA, Inc.*, 179 F.3d 641, 652 (9th Cir. 1999) (citing *Schlesinger v. Reservists Comm. to Stop the War*,

23  418 U.S. 208, 216 (1974)).  The Court will decide this issue at class certification, when the Court will

24  be better positioned to determine whether employees in California share the same interests and suffered

25  the same injuries as employees in other jurisdictions.

26         Accordingly, defendants' motion on this issue is DENIED without prejudice to reconsideration

27

28                                                         26

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1    at class certification.

2

3        **F.      Meal Break, Rest Period, and Off-the-Clock Claims**

4            Defendants move to dismiss all of plaintiffs' claims regarding rest periods, meals breaks, and

5    off-the-clock work pursuant to *Brinker Rest. Corp. v. Superior Court*, 80 Cal. Rptr. 3d 781 (Cal. App.

6    2008). *Brinker* held that employers need only provide meal breaks, not ensure that the breaks are taken.

7    80 Cal. Rptr. 3d at 786.  Because defendants' liability in *Brinker* turned on whether meal and rest

8    periods were made available and why employees missed their breaks, the court found that individual

9    issues predominated, making class certification inappropriate. *Id.*  Defendants urge this Court to dismiss

10   plaintiffs' claims because plaintiffs allege only that defendants *allowed* plaintiffs to work off the clock

11   and during their meal and rest periods, not that defendants forced them to do so.   Alternatively,

12   defendants argue that plaintiffs' class action allegations should be stricken because under *Brinker*,

13   individual questions about why employees missed their rest and meal breaks predominate.

14           Defendants' arguments fail for two reasons.  First, plaintiffs allege that defendants prevented

15   plaintiffs from taking breaks not – as defendants maintain – that they merely allowed plaintiffs to work

16   during their breaks.  *See* Complaint ¶ 255 ("Defendants repeatedly and regularly interrupted Class

17   Members' meal and rest periods and/or required Class Members to forego their meal and rest periods.").

18   Second, the California Supreme Court accepted *Brinker* for hearing on October 22, 2008.  *See* 85 Cal.

19   Rptr. 3d 688.  Under the California Rules of the Court, *Brinker* is therefore not citable authority.  Cal.

20   Rules of Court 8.1105(e).

21           The Court finds that a stay of some or all of this action may be appropriate if the California

22   Supreme Court has not issued an opinion in *Brinker* by the time discovery begins.  The Court will

23   decide this matter when it issues a pretrial order.

24

25       **G.      Claims Sounding in Fraud**

26           Defendants argue that plaintiffs' claims for fraud and misrepresentation must be dismissed

27

28                                                    27

United States District Court
For the Northern District of California

1  because plaintiffs have failed to plead them with particularity, as required by Rule 9(b).   Under

2  California law, the elements of common law fraud are "misrepresentation, knowledge of its falsity,

3  intent to defraud, justifiable reliance and resulting damage."  *Gil v. Bank of Am., N.A.*, 138 Cal. App.

4  4th 1371, 1381 (2006).  To state a claim for negligent misrepresentation, plaintiff must allege that the

5  defendant: (1) made a misrepresentation of a material fact; (2) without reasonable grounds for believing

6  it to be true; (3) with intent to induce another's reliance and that plaintiff (4) was ignorant of the truth,

7  (5) justifiably relied on the misrepresentation and (6) suffered damages.  *See B.L.M. v. Sabo & Deitsch*,

8  55 Cal. App. 4th 823, 834 (1997).   Common law claims of fraud must be pled with sufficient

9  particularity.  *See* Fed. R. Civ. P. 9(b) ("[I]n all averments of fraud . . . the circumstances constituting

10  fraud . . . shall be stated with particularity.").  Therefore, in addition to the "time, place and content of

11  an alleged misrepresentation," a complaint "must set forth what is false or misleading about a statement,

12  and . . . an explanation as to why the statement or omission complained of was false or misleading."

13  *Yourish v. Cal. Amplifier*, 191 F.3d 983, 993 n.10 (9th Cir. 1999).

14       Here, plaintiffs allege the following basis for their fraud and misrepresentation claims:

15       Defendants, through their corporate publications and through statements of their agents,
16       represented that wages would be paid legally and in accordance with defendants'
         obligations pursuant to federal and state laws.  For example, defendants falsely stated in
17       their policy manuals that "[o]vertime is defined as any hours worked in excess of 40
         hours per week as mandated by federal law. . . . Nonexempt employees shall be paid at
18       a rate of one and one-half (1) times their hourly rate for all overtime hours worked."

19  Complaint ¶¶ 278, 286.  The Court agrees with defendants that plaintiffs fail to provide a sufficient

20  factual basis for their fraud claims.  As noted in the foregoing discussion of federal preemption,

21  plaintiffs' allegation is essentially that defendants failed to pay statutorily required overtime and is thus

22  preempted by the FLSA.  Plaintiffs must allege some other factual basis for their fraud claims, including

23  facts demonstrating that defendants knew the statements were false when they made them.

24       Accordingly, plaintiffs' fraud and misrepresentation claims are DISMISSED with leave to

25  amend.

26

27

28
                                                28

**United States District Court**
For the Northern District of California

**5.      Evidentiary Objection**

Defendants object to the declaration of Sarah Cressman, filed by plaintiffs in support of their opposition to defendants' motions to dismiss.  The Court agrees with defendants that much of the Cressman declaration consists of legal conclusions and factual statements that are not within Cressman's personal knowledge.  The Court has therefore disregarded the Cressman declaration itself and, where appropriate, has considered only the underlying documents.

# CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby DENIES defendants' motions for sanctions. [*Helm* Docket 142, *Bryant II* Docket 141]  Defendants' motions to dismiss for failure to state a claim are DENIED IN PART AND GRANTED IN PART. [*Helm* Docket 139, *Bryant II* Docket 139]  The *Bryant II* defendants' motion to dismiss for lack of personal jurisdiction is GRANTED IN PART AND DENIED IN PART. [Docket No. 127] If plaintiffs wish to file an amended complaint, **they must do so by August 14, 2009**.

**IT IS SO ORDERED.**

Dated: July 29, 2009

_____
SUSAN ILLSTON
United States District Judge